# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO ALEJANDRO GAMEZ, | 1:09-CV-01375 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| F. GONZALEZ, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections serving an indeterminate sentence of fifteen years to life for his 1982 conviction in the Los Angeles County Superior Court for second degree murder. (Pet. at 3.)

On March 11, 2008, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. (HT[1] at 3.) Petitioner attended the hearing and was represented by an attorney. (HT at 3-4.) At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. (HT at 103-120.)

On June 3, 2008, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court. See Answer, Exhibit D. On July 23, 2008, the petition was denied in a

---

[1] "HT" refers to the hearing transcript that is contained in Exhibit A of Respondent's Answer.

1

reasoned decision. See Answer, Exhibit D. Petitioner then filed a habeas petition on September 26, 2008, in the California Court of Appeals, Second Appellate District. See Answer, Exhibit C. The petition was denied on October 9, 2008, with citation to In re Dannenberg, 34 Cal.4th 1061, 1070-71 (2005), In re Rosenkrantz, 29 Cal.4th 616 (2002), In re Lawrence, 44 Cal.4th 1181 (2008), and In re Shaputis, 44 Cal.4th 1241 (2008). See Answer, Exhibit C. On December 1, 2008, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Answer, Exhibit A. On June 10, 2009, the petition was summarily denied. See Answer, Exhibit B.

On July 21, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. The petition challenges the 2008 decision of the Board of Parole Hearings denying parole. On November 6, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on December 3, 2009.

## FACTUAL BACKGROUND[2]

Shortly before midnight on April 6, 1981, both victims were walking in the Hollywood area of Los Angeles. The inmate and co-defendant Dix approached them in a vehicle near the intersection of El Centro and Romaine Street. The vehicle stopped and both Petitioner and Dix exited and approached the victims. The inmate and Dix accused the victims of being rival gang members. The victims denied any gang affiliation, at which time Petitioner identified himself as a Clanton gang member and began firing a rifle at the victims. Victim Lopez fell to the ground wounded. Victim Lopez died at the scene and victim Burnell was transported and treated for gunshot wounds. A short time later, police observed the suspect's vehicle at a service station. The officers observed what later proved to be the murder weapon, a .22-caliber semi-automatic rifle, lying in plain view inside the vehicle. Both defendants were arrested without incident.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[2] The information is derived from the factual summary set forth in the parole hearing proceedings. (HT 17-18.)

2

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

      Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

      As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

3

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see also</u> <u>Greenholtz</u>, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." <u>Id</u>.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); <u>Irons v. Carey</u>, 505 F.3d 846, 851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination

5

was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) Previous record of criminal conduct and gang association; and 3) Institutional behavior. (HT at 103-120.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[3] Specifically, the Board found that the offense was carried

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

out in a calculated and dispassionate manner pursuant to § 2402(c)(1)(B). The superior court determined there was no evidence in the record to support this finding. See Answer, Exhibit D. The Board also found that multiple victims were attacked pursuant to § 2402(c)(1)(A). The superior court determined the evidence supported this finding given that one victim was killed and another was wounded by Petitioner. Id. Finally, the Board found that the motive was very trivial in relation to the crime pursuant to § 2402(c)(1)(E). The superior court determined some evidence supported this finding in light of the fact that the only reason Petitioner killed and wounded the victims was because the victims may have belonged to a different gang. See Answer, Exhibit D. The superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

      The Board next found Petitioner's prior criminal history, including acts of assault with a deadly weapon and gang activities, demonstrated a danger to the public if released. 15 Cal. Code Regs. § 2402(c)(2). Petitioner began his gang activities at the age of 12. (HT 30-31.) At the time of the parole hearing, Petitioner was in secured housing because he was still considered a validated gang member of the "EME" gang. (HT 22-31, 104-05.) Prior to the instant offense, Petitioner demonstrated an escalating pattern of criminal conduct and violence. (HT 45-51, 106.) Petitioner had been found guilty of stealing vehicles, using drugs, exhibiting a deadly weapon and committing an assault with a deadly weapon. (HT 45-51.) The superior court found some evidence supported the Board's determination that Petitioner's prior criminal record supported a finding of unsuitability. See Answer, Exhibit D. In light of Petitioner's violent criminal past, the state court determination was not unreasonable.

      Finally, the Board determined Petitioner's extensive negative institutional behavior was an indicator of unsuitability pursuant to 15 Cal. Code Regs. § 2402(c)(6). As noted above, at the time of the hearing Petitioner was in the secured housing unit as a validated gang member. (HT 22-31, 104-05.) He had refused to be debriefed to sever his gang affiliation. (HT 53.) Moreover,

---

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

Petitioner had sustained fourteen "CDC-115" serious disciplinary violations, the most recent one being in 1995 for work stoppage. (HT 108.) In addition, Petitioner committed eleven "CDC-128" negative counseling instances, the last one being in 2001 for failure to follow a direct order. (HT 108.) The state court found some evidence supported a finding of unsuitability on this factor. In light of the facts, the finding is reasonable.

The Board considered the positive factors favoring parole release. The Board noted that Petitioner had obtained marketable skills in the building maintenance vocation. (HT 109-10.) He also had viable residential plans in Mexico. (HT 110.) Petitioner also had participated and demonstrated proficiency in Alcoholics Anonymous. (HT 109.) However, the Board concluded Petitioner remained an unreasonable risk of danger to the public in light of the circumstances of the offense, his past criminal behavior, and his negative institutional behavior. The state court finding that some evidence supported this determination was not unreasonable.

Petitioner also complains that he received ineffective assistance of counsel at the parole proceeding. However, "the protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings." Bonin v. Vasquez, 999 F.2d 425, 430 (9th Cir.1993). The Ninth Circuit has asserted that "since the setting of a minimum term is not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated...." Pedro, 825 F.2d at 1399; Jancsek, 833 F.2d at 1390. As previously discussed, an inmate's right to due process is satisfied in a parole hearing where the state "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respect he falls short of qualifying for parole." Greenholtz, 442 U.S. at 15. Because Petitioner's constitutional rights were met during his parole hearing, his ineffective assistance claim should be denied.

Petitioner also claims the parole board continues to rely on unchanging factors in violation of his constitutional rights. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due

process violation," this is not the situation here. As discussed above, the parole board did not rely solely on the underlying offense. The board also relied on Petitioner's escalating criminal and violent behavior which extended well into his imprisonment and included continued gang activity. These additional facts are not immutable and stale. Therefore, the concerns present in <u>Biggs</u> are not at issue here.

Petitioner has not shown that the state court resolution of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The petition should be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 27, 2010**        **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE